926 A.2d 805

**William TAYLOR a/k/a Tavon Getrightson**

v.

**STATE of Maryland.**

**No. 1185, Sept. Term 2005.**

Court of Special Appeals of Maryland.

June 28, 2007.

---

6. We do not suggest that the court's comment was inappropriate.

156

Luba Shur (Williams & Connolly, LLP on the brief), Washington, DC, and (Nancy C. Forster, Public Defender on the brief), of Baltimore, for appellant.

Jeremy M. McCoy (J. Joseph Curran, Jr., Attorney General on the brief), Baltimore, for appellee.

Argued before SALMON, ADKINS and BARBERA, JJ.

ADKINS, J.

Md.Code (2002, 2006 Cum.Supp.), section 5–608 of the Criminal Law Article (Crim.) establishes mandatory minimum sentences for second, third, and fourth drug crimes. This cross-appeal by the State requires us to decide whether a repeat drug offender, who was convicted on the same day of two predicate drug felonies, but was not sentenced as a second offender under section 5–608(b) and has not served 180 days of his sentences for those crimes, may be sentenced on a subsequent conviction under the mandatory minimum 10–year sentence enhancement for second offenses. In the circumstances presented here, we hold that a subsequent offender who has not served the requisite 180 days on his second drug crime conviction to qualify for the 25 year minimum sentence for third offenses, but who has not previously been sentenced to the 10–year mandatory minimum sentence for second offenses, should be sentenced as a subsequent offender under Crim. section 5–608(b).

## FACTS AND LEGAL PROCEEDINGS

Baltimore City Police Officer Brian Shutt testified that on the afternoon of November 9, 2004, he and Officer Anthony Maggio were passengers in an unmarked police car driven by Officer Frank Nellis. They were traveling in an area known for frequent drug trafficking when they observed pedestrians scattering as they approached. Shutt got out of the car and found a "covert" hiding place where he could observe the area. Maggio and Nellis left the area and waited for Shutt in the vehicle.

Shutt testified as an expert in the field of observation, detection, identification, and packaging of street level narcotics. From a distance of approximately 40 feet, Shutt used binoculars to see what he believed was "an illegal narcotics transaction." He observed a black female approach one of the males, speak with him and then hand him money. That male then spoke with appellant William Taylor (aka Tavon Getrightson), who responded by jogging down Curley Street and then

> up some steps of a vacant house. He reached down. He pulled out a plastic bag and from what I could see, I couldn't tell exactly what was in the plastic bag but it was the size and shape . . . that's consistent with illegal narcotics that are sold in that area, either in gel capsules or in small vials. He reached into the bag and pulled his hand out. He put the bag down, back to where he got it. He came back to where this female was waiting and he handed her whatever he took out of the bag. . . . It was small, the item was . . . larger than a tee; it was smaller than a cigarette and it could be cupped in [Taylor's] hand and he gave it to this female like this and the female left the area in a very hurried manner.

Officer Shutt then called his partners to pick him up. By the time they arrived, Taylor was the only person still in the vicinity of the transaction. Officer Nellis retrieved the bag that Taylor handled, from behind the steps of the vacant house. Subsequent chemical analysis indicated that the bag contained 22 gel capsules of heroin and 44 glass vials of cocaine. Taylor was arrested at the scene.

A jury in the Circuit Court for Baltimore City convicted Taylor of two counts of possession and two counts of possession with intent to distribute controlled substances. After merging the possession offenses into the distribution offenses, the court sentenced Taylor to concurrent terms of 12 years for each conviction, but declined to impose the enhanced mandatory penalties for either second or third offenders under Crim. section 5–608.

Taylor raises one question in his appeal:

I. Was the evidence sufficient to support the convictions?

The State raises the following question in its cross-appeal:

II. Did the sentencing court err in not imposing a mandatory enhanced sentence for second offenders under section 5–608(b)?

We find sufficient evidence for the convictions. We shall remand for re-sentencing, however, because the trial court erroneously believed that the ten-year second offender sentencing enhancement under Crim. section 5–608(b) could not be imposed on Taylor.

## DISCUSSION

### I.

### Sufficiency Of Evidence

Taylor argues that the evidence was insufficient to convict him on any charge. He offers three reasons that "Shutt's testimony is neither credible nor sufficient to establish that Mr. Taylor possessed drugs, whether with the intent to distribute them or otherwise." We find none of these persuasive.

As a threshold matter, we agree with the State that Taylor failed to preserve his sufficiency challenge for appellate review. In moving for a judgment of acquittal at the close of the State's case, Taylor's counsel stated as grounds for the motion: "I don't believe the State has satisfied its burden of . . . providing sufficient evidence to go any further than this." After resting Taylor's case, defense counsel simply "[r]enewed my motion."

In moving for a judgment of acquittal, "[t] he defendant [must] state with particularity all reasons why the motion should be granted." Md. Rule 4–324(a). Moreover, under Maryland rules and precedent, "review of a claim of insufficiency is available only for the reasons given by appellant in his motion for judgment of acquittal." *Whiting v. State*, 160 Md.App. 285, 308, 863 A.2d 1017 (2004), *aff'd on other grounds*, 389 Md. 334, 885 A.2d 785 (2005). When no reasons

are given in support of the acquittal motion, this Court has nothing to review. Having failed to challenge the State's evidence on the particularized grounds he now asserts in this appeal, Taylor did not preserve his challenge to the sufficiency of that evidence.

 Even if he had done so, we would not reverse the convictions.[1] *See, e.g., Rivers v. State,* 393 Md. 569, 580, 903 A.2d 908 (2006) (court's task in reviewing sufficiency of evidence is to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt). As Chief Judge Joseph F. Murphy, Jr. explained for this Court in *Archie v. State,* 161 Md.App. 226, 244–45, 867 A.2d 1120, *cert. denied,* 387 Md. 462, 875 A.2d 767 (2005),

> [i]n order to "possess" a controlled dangerous substance, a person must "exercise actual or constructive dominion or control over [the substance]." Possession need not be immediate and direct but may be constructive. Knowledge of the presence and illicit nature of narcotics may be proven by inferences from the circumstances as a whole. The fact that drugs were not found on the person of the defendant does not prevent the inference that the defendant had possession and control of those drugs. The following factors are relevant to the issue of whether the evidence was sufficient to show that appellant possessed the drugs in question:
>
> (1) proximity between the defendant and the contraband, (2) the fact that the contraband was within the view or otherwise within the knowledge of the defendant, (3) ownership or some possessory right in the premises or the automobile in which the contraband is found, or (4) the presence of circumstances from which a reasonable inference could be drawn that the defendant was participating with others in the mutual use and enjoyment of the contraband. (Citations omitted.)

---

1. We address the merits of Taylor's sufficiency argument in order to preclude a petition for postconviction relief on these grounds.

*See also State v. Suddith,* 379 Md. 425, 432, 842 A.2d 716 (2004)("the mere fact that the contraband is not found on the defendant's person does not necessarily preclude an inference by the trier of fact that the defendant had possession of the contraband"); *Veney v. State,* 130 Md.App. 135, 144, 744 A.2d 1094 (drugs found in "close proximity" to the defendant, when accompanied by evidence that the defendant was aware of them and had access to them, can provide a sufficient connection to support an inference of possession), *cert. denied,* 358 Md. 610, 751 A.2d 472 (2000).

■ Taylor's threshold challenge to Officer Shutt's credibility rests on his assertion that Officer Shutt "was so far removed from the key events he claims to have observed that he relied on binoculars ... part of the time" and "could not see the currency that Mr. Taylor received" or what Taylor gave to the unidentified black female. Neither the 40 feet between Shutt and the transaction he observed, nor Shutt's use of binoculars so undermined the credibility of the officer's testimony that it must fail as a matter of law. *Cf., e.g., McCoy v. State,* 118 Md.App. 535, 537–38, 703 A.2d 237 (1997)(testimony by officer who observed drug transaction through binoculars from 75 ft. away was sufficient to convict), *cert. denied,* 349 Md. 235, 707 A.2d 1329 (1998); *Garrison v. State,* 88 Md.App. 475, 477, 594 A.2d 1264 (1991)(evidence that officer observed drug transaction from 45 feet away was sufficient to convict), *cert. denied,* 325 Md. 249, 600 A.2d 418 (1992).

Nor is reversal required simply because Taylor does not live in the house used in the transaction. Here, possession of the contraband reasonably may be inferred from evidence that an officer trained as an expert in street level drug transactions observed Taylor access and store drugs behind exterior steps to a vacant rowhouse, precisely where police presently recovered such drugs. The jury could reasonably conclude from this evidence that Taylor was using this location to conceal contraband between drug sales, even if he had no "possessory" connection to that property.

■ Taylor's next complaint, about lack of "physical evidence linking Mr. Taylor to any controlled substances," is similarly without merit. Possession may be established on the basis of eyewitness testimony such as the testimony here by a surveilling police officer. *See, e.g., Jackson v. State,* 82 Md. App. 438, 446–47, 572 A.2d 567 (1990) (possession and distribution convictions were supported by evidence that police officers conducting drug surveillance observed defendant and accomplice repeatedly deliver small baggies containing white substance to persons exhibiting physical characteristics of drug addicts upon payment in currency), *aff'd on other grounds,* 322 Md. 117, 586 A.2d 6 (1991). In addition to testimony that police found illegal drugs precisely where Officer Shutt observed Taylor access them, this record includes an authenticated photograph with a hand-drawn arrow pointing to this location. A reasonable juror could conclude that the discovery of drugs where Taylor repeatedly went to retrieve something for a paying customer, shortly after engaging in such transactions, provided the requisite link between Taylor and the drugs.

## II.

### Sentencing Enhancement For Subsequent Offenders

■ Crim. section 5–608(b) mandates enhanced sentencing for subsequent offenders [2] convicted of certain felony drug crimes. It creates a tiered sentencing scheme for first, second, third, and fourth offenders, with mandatory minimum terms of sentencing for each succeeding conviction. In this manner, the legislature requires increasing punishment when the defendant's recidivism warrants such enhancement. *Cf. Simms v. State,* 83 Md.App. 204, 218, 574 A.2d 12 (recognizing same legislative intent for statute enhancing sentences of

---

2. "A subsequent offender is a defendant who, because of a prior conviction, is subject to additional or mandatory statutory punishment for the offense charged." Md. Rule 4–245(a).

repeat violent offenders), *cert. denied*, 321 Md. 68, 580 A.2d 1077 (1990).

The statute provides, in pertinent part:

(a) *In general.*—Except as otherwise provided in this section, a person who violates a provision of §§ 5–602 through 5–606 of this subtitle with respect to a Schedule I or Schedule II narcotic drug is guilty of a felony and on conviction is subject to imprisonment not exceeding 20 years or a fine not exceeding $25,000 or both.

(b) *Second time offender.*—(1) A person who is convicted under subsection (a) of this section . . . **shall be sentenced to imprisonment for not less than 10 years** . . . *if the person previously has been convicted once:*

(i) under subsection (a) of this section or § 5–609 of this subtitle. . . .

(2) The court may not suspend the mandatory minimum sentence to less than 10 years.

(3) Except as provided in § 4–305 of the Correctional Services Article, the person is not eligible for parole during the mandatory minimum sentence.

(c) *Third time offender.* (1) A person who is convicted under subsection (a) of this section . . . shall be sentenced to imprisonment for not less than 25 years . . . if the person previously:

(i) **has served at least one term of confinement of at least 180 days in a correctional institution as a result of a conviction** under subsection (a) of this section, § 5–609 of this subtitle, or § 5–614 of this subtitle; and

(ii) **has been convicted twice, if the convictions arise from separate occasions:**

1. under subsection (a) of this section or § 5–609 of this subtitle. . . .

(2) The court may not suspend any part of the mandatory minimum sentence of 25 years.

(3) Except as provided in § 4–305 of the Correctional Services Article, the person is not eligible for parole during the mandatory minimum sentence.

(4) **A separate occasion is one in which the second or succeeding crime is committed after there has been a charging document filed for the preceding crime.** (Emphasis added.)

Crim. § 5–608.

Pursuant to Md. Rule 4–245(c),[3] the State filed notice of its intent to seek a mandatory 10–year penalty against Taylor under section 5–608(b), based on his two August 12, 2004 convictions for possession of heroin and cocaine and possession with intent to distribute those drugs. At the sentencing hearing, the State argued that, although there is no case law precedent for the circumstances presented by this case, Taylor's 2004 convictions should be treated as a single first conviction for purposes of the second offender enhancement under section 5–608(b).

> It's the State's position that ... the conviction on August 12th, 2004 under both of the case numbers ... equals one conviction.... [T]hey occurred on the same date by the same judge, under the same plea agreement. The Defendant was given the same concurrent sentences and the same period of probation was all run concurrently by Judge McCurdy on that day. He was given a sentence of seven years suspend all but six months and two years ... of supervised probation.
>
> Your Honor, it's the State's position that that would equal one prior conviction.... *Gargliano v. State* .... indicates that the legislative intent behind the enhanced penalty

---

3. "When the law prescribes a mandatory sentence because of a specified previous conviction, the State's Attorney shall serve a notice of the alleged prior conviction on the defendant or counsel at least 15 days before sentencing in circuit court or five days before sentencing in District Court." Md. Rule 4–245(c). "Before sentencing and after giving the defendant an opportunity to be heard, the court shall determine whether the defendant is a subsequent offender as specified in the notice of the State's Attorney." Md. Rule 4–245(e).

statute is that when a defendant is given an opportunity under one conviction ... to reform himself after he has been convicted once of a CDS felony.... [T]he Defendant did not avail himself of the opportunities that were afforded to him.. and continued to re-offend....

In opposition, Taylor asserted that his August 2004 convictions constituted separate first and second convictions, meaning that the current convictions would be his third offense. Strange as that argument might seem from a subsequent offender facing stiff mandatory sentencing enhancements, Taylor's strategy was designed to avoid application of **both** the second and third offender penalties, which in turn would avoid the statutory restrictions on the sentencing court's discretion to suspend a portion of the sentence and on the Parole Board's discretion to grant parole before the mandatory minimum period of incarceration is served. Defense counsel admitted that "the result might not make sense but it is what the legislature said and I think that the *Thomas* case ... says ... that the language of the statute says second and therefore only the second conviction can be punished by ten without parole." In Taylor's view, because he had *two* prior convictions, he could not be sentenced as a second offender under subsection 5–608(b); moreover, because he had not served at least 180 days of confinement on either of those convictions, he could not be sentenced as a third offender under subsection 5–608(c).

■ The State objected that the statutory construction posited by the defense would preclude sentence enhancements whenever the predicate CDS convictions occur simultaneously.[4]

---

4. The prosecution's argument rests on established law that second offender enhancement may not be imposed if, as in this case, the conviction for the predicate *(i.e.,* first) offense occurred after the defendant committed the second offense for which enhancement is sought. *See Gargliano v. State,* 334 Md. 428, 445, 639 A.2d 675 (1994). Because Taylor was not convicted for his October 2003 drug offense at the time he committed his second offense in February 2004, the State could not seek second offender enhancement for the second offense.

The sentencing court confirmed that the first offense date was October 28, 2003, and the second offense date was February 26, 2004, with convictions on both offenses occurring on August 12, 2004, in separately numbered cases, pursuant to a plea agreement encompassing both. The court then agreed with Taylor that he could not be sentenced as either a second or third offender, reasoning as follows:

> [W]e have ... a conviction on each of two cases which occurred on the same date, at the same time, by the same judge, with the same time [*i.e.*, term of imprisonment] being given and suspended concurrently. However, there are two separate case numbers. The evidence in one was not the evidence in the second. For all intents and purposes, these are two separate cases. ...
>
> And if there's any room for ambiguities, supposition, or guesswork, that it should be resolved in favor of the lesser penalty. ... [W]hat I'm going to rule is that **a strict construction interpretation of the statute does not apply to this set of circumstances and therefore I am mandated by prior law, I think, to impose only that punishment which is contemplated by statute. ... [W]hat that means is that he is not eligible for the ten [years] without [parole]** and because he has not served 180 days, he's not eligible for the 25 without [parole]. (Emphasis added.)

 The State cross-appeals the sentencing court's decision not to impose a mandatory sentence of ten years without the possibility of parole under Crim. section 5–608(b). It argues that the statute contains no language "that prohibits its application to the present case." The court's error, the State contends, is in narrowing this second offender provision to apply "only 'if the person previously has been convicted once, *and only once*' of a felony offense." [5] For the reasons set forth below, we agree.

---

5. The State wisely abandons its contention that the August 12, 2004 convictions should be treated as a single conviction for purposes of subsection 5–608(b). Because the two offenses were committed on different dates and were not otherwise part of a single criminal episode,

## Application Of Section 5–608(b)

We have long recognized that the legislative scheme of tiered sentencing enhancements is designed to distinguish between punishing multiple offenders via the mandatory 10–year sentencing enhancement in subsection 5–608(b) and punishing recidivist offenders via the 25 and 40–year enhancements in subsections 5–608(c) and (d). *See State v. Polley,* 97 Md.App. 192, 202, 627 A.2d 562 (1993). In *Gargliano v. State,* 334 Md. 428, 639 A.2d 675 (1994), the Court of Appeals closely examined the provenance and purpose of the same subsection and language we are called upon to interpret here. The analytical framework in that case provides an appropriate template for our interpretation of the statute in this new context.

The *Gargliano* Court recognized that the phrase "if the person previously has been convicted" is not clearly defined in the statute or otherwise discussed anywhere in legislative history. *See Gargliano,* 334 Md. at 438–42, 639 A.2d 675. Because the dueling interpretations offered by the State and the defendant in that case were both reasonable, the Court "look[ed] beyond the words of the statute … to other evidence of legislative intent to determine which interpretation of the two best furthers the legislative object or goals." *Id.* at 439, 639 A.2d 675.

Consequently, the Court analyzed the meaning of the proviso "if the person previously has been convicted" in the context of the problem it was enacted to address.

In construing Maryland enhanced penalty statutes similar to § 286(c), we have found that such statutes were enacted with the purpose of identifying defendants who have not reformed their behavior after prior convictions and incarcerating such defendants for a longer period than would otherwise be applicable in order to protect the community and deter others from similar behavior. The means for achiev-

the sentencing court correctly ruled that the two convictions on August 12, 2004 were first and second drug convictions.

ing such deterrence is the provision of fair warning to previous offenders that if they continue to commit criminal acts after having had the opportunity to reform after one or more prior contacts with the criminal justice system, they will be imprisoned for a considerably longer period of time than they were subject to as first offenders.... [We] find that the Legislature had the same intent in enacting § 286(c). An enhanced penalty statute will best deter future criminal conduct when the defendant is made aware that the subsequent commission of criminal acts will be more harshly punished. Where, as here, the defendant has not been convicted of an earlier offense, and thereby warned about the enhanced consequences of future criminal conduct, prior to the commission of the principal offense, the imposition of an enhanced penalty is not warranted.

*Id.* at 444–45, 639 A.2d 675 (citations omitted).

Taylor renews his argument that this Court considered and rejected the State's interpretation of the same phrase in *Thomas v. State,* 104 Md.App. 461, 656 A.2d 799 (1995). In that case, we interpreted the predecessor to the current enhanced penalty provisions, Art. 27, section 286, which established benchmarks for the 10, 25, and 40 year enhancements based, *inter alia,* on whether the defendant was being "sentenced, on being convicted a second time[,]" "third time," or "fourth time." *See id.* at 466–67, 656 A.2d 799. We concluded that "the word 'second,' as used in [the prior statute], really means only 'second,' *i.e.,* 'next in order after the first in time or place[,]'" and does not mean "anything more than 'first'" so that it "includes 'third.'" *Id.* at 466, 656 A.2d 799.

But the enhanced sentence we reviewed in *Thomas* differed materially from Taylor's sentence in this case, because, unlike Taylor, Thomas had already been sentenced as a second offender to the statutory 10–year non-suspendable, non-parolable minimum for another conviction.[6] Thomas could not be

---

6. Writing for the Court, Chief Judge Wilner explained that

sentenced as a third offender, because he committed the crime leading to the third conviction before his second conviction occurred. He argued that the sentencing court could not impose a second 10–year enhancement just because he could not be sentenced as a third offender.

This Court agreed with Thomas that another second offender enhancement could not be imposed. *See id.* at 470, 656 A.2d 799. In support, we cited (1) the "highly penal" nature of the penalty enhancement statute, (2) legislative history indicating that the 1988 General Assembly substituted for the prior generalized sentencing provision this specific scheme of graduated penalties for first through fourth offenses, (3) the fact that Thomas had already been sentenced under the latter scheme as a second offender after his second conviction, and (4) precedent applying the "rule of lenity" as a "presumption in favor of the lesser penalty over the greater one" when "resolving uncertainty" about "the severity of a penalty provided in a penal statute." *See id.* at 466, 469, 656 A.2d 799; *Gargliano*, 334 Md. at 437, 639 A.2d 675. Ultimately, we concluded:

> **There can be little doubt here as to the legislative intent.** The General Assembly in 1988 repealed a statute that provided a mandatory 10–year minimum sentence upon a

---

[T]he evidence on which that sentence was based showed that this was, in fact, appellant's third conviction in sequence, not his second, but, because the second conviction had not occurred before he committed the crime leading to this conviction, he could not be sentenced under subsection (d) [governing third offenders]. *See Gargliano v. State,* 334 Md. 428, 446, 639 A.2d 675 (1994)....
Appellant's first conviction occurred in 1992. His arrest on the charge leading to this conviction occurred in 1993, "within weeks" of another arrest on drug charges. Although the precise dates are not clear from the record, we are informed, without contradiction, that **appellant was convicted and sentenced on the other 1993 charge before he was sentenced on this conviction and that he was sentenced under § 286(c) to a non-suspended, non-parolable 10 years on that occasion. The imposition of sentence under subsection (c) [governing second offenders] on this [third] conviction thus constitutes his second sentence under that section.**
*Thomas v. State,* 104 Md.App. 461, 468–69, 656 A.2d 799 (emphasis added).

finding of any previous conviction in favor of a more structured approach of increasing mandatory sentences for a second, third, and fourth conviction. It was presumably aware of our holding in *Calhoun*[7] that, where a statute prescribes an enhanced penalty for a "third" conviction, as opposed to a "second or subsequent" conviction, it allows that penalty only upon the one conviction that constitutes the third, and not upon any conviction beyond the second. The Legislature had a variety of language to choose from, in existing enhanced punishment statutes, and it chose specificity over generality. In 1991, when it amended § 286(c)(1) to include certain foreign convictions, it left unchanged the specific language "as a second offender" in the provision mandating a non-suspendable, essentially non-parolable sentence for persons previously convicted.

*Id.* at 470, 639 A.2d 675 (emphasis added).

We specifically rejected

[t]he State's argument that this result would be inconsistent with the legislative purpose of increasing the mandatory penalties upon subsequent convictions.... **The legislative purpose enunciated in the statute has been fulfilled to the letter. Appellant received the required 10–year non-suspendable, non-parolable sentence upon his conviction as a second offender. What the State seeks to do is have the sentence carefully prescribed for a sentence as a second offender imposed upon a third conviction when the conditions for a mandatory sentence for someone who has been convicted twice have not been satisfied.**

---

**7.** In *Calhoun v. State*, 46 Md.App. 478, 418 A.2d 1241 (1980), *aff'd*, 290 Md. 1, 425 A.2d 1361 (1981), we construed statutory sentencing enhancements for violent criminals, holding that the sentencing court could impose "only one mandatory sentence without the possibility of parole" for two qualifying convictions, one for armed robbery and the other for a handgun offense. *Id.* at 489, 418 A.2d 1241. In doing so, we noted that "[t]he draftsmanship of the statute is patently inartful, but left [a]ny change ... to the legislature." *Id.* at 489–90, 418 A.2d 1241.

That, not the result we reach, would be inconsistent with the legislative intent.

*Id.* (emphasis added).

In *Thomas*, we recognized the change in language from the first version of former Art. 27, section 286, which stated that it applied when a defendant was "sentenced, on being convicted a second time[.]" *See id.* at 466, 656 A.2d 799; 1988 Md. Laws, ch. 439. In 1991, the "second time" language was deleted and the subsection revised to apply "if the person previously has been convicted[.]" *See id.* at 467, 656 A.2d 799; 1991 Md. Laws, ch. 185.

After Thomas, in 2002, subsection 286(c) was recodified in the newly enacted Criminal Law Article. *See* 2002 Md. Laws, ch. 26. In the recodification process, the word "once" was added to the end of the qualifying proviso, resulting in the current version mandating a minimum sentence of ten years "if the person previously has been convicted *once* " of specified crimes. *See* Crim. § 5–608(b) (emphasis added). The Revisor's Note states with respect to section 5–608, however, that it "is new language derived without substantive change from former Art. 27, § 286(b)(1) and, as they related to narcotic drugs, (c), (d), and (e)." Crim. § 5–608, Revisor's Note. We therefore agree with the State that the word "once" in current subsection 5–608(b) cannot be construed to limit the phrase "if the person previously has been convicted" to only those persons who have a single prior conviction. As recognized in *Gargliano*, the phrase describes persons who continue to offend, despite being advised as a result of an initial conviction that any future drug crimes will be punished more severely. To narrow the class of persons who "previously ha[ve] been convicted" to those who have only one prior conviction would give substantive meaning to the term "once," in disregard of the Revisor's assurance that no such amendment was intended. *See, e.g., DeBusk v. Johns Hopkins Hosp.*, 342 Md. 432, 444, 677 A.2d 73 (1996)(general recodifications of statutes are presumed to be "for the purpose of clarity only and not substantive change, unless the language of the recodified

statute unmistakably indicates the intention of the Legislature to modify the law").

To be sure, the dilemma we identified in *Thomas,* regarding enhanced sentencing for third offenders who do not meet the explicit prerequisites for sentencing enhancement under section 5–608(c), persists. Shortly after *Thomas,* the Criminal Law Article Review Committee annotated the official Code, in order to

> note for the consideration of the General Assembly, that in subsection (c)(1)(i) of this section, a third-time offender who does not serve sufficient time under the second conviction may be treated as a first-time offender. *Cf. Thomas v. State,* 104 Md.App. 461, 656 A.2d 799 (1995), where the Court held that "second" means "second" only and would thus not apply to a defendant who was convicted for a third time but did not meet requirements for enhanced sentencing under Art. 27, § 286(d) governing third convictions. The General Assembly may wish to explore the consistency of repeat-offender provisions in this section and in § 5–609 of this subtitle.

Taylor reads our decision in *Thomas* and the statutory "gap" identified by the Criminal Law Article Commission too broadly. Our holding in *Thomas* applies only when there has already been a second offender sentencing enhancement, and does not preclude second offender enhancement when no enhancement has been imposed. The specific problem we identified and corrected in *Thomas* was the imposition of a *second* 10–year non-suspendable, non-parolable second offender sentence under subsection 5–608(c). We held that, once the State has obtained one 10–year enhancement for a subsequent drug conviction, it may not seek another 10–year enhancement for a third conviction when the statutory conditions for the 25–year enhancement are not satisfied. Read in context, our decision merely upholds the legislative scheme of tiered sentencing enhancements so that a defendant cannot receive second offender enhancements *for both a second conviction and a third conviction.*

Since *Thomas,* this Court has decided two more sentencing enhancement cases that, although also presenting different circumstances than this case, instructively resolve subsequent offender dilemmas involving circumstances not explicitly covered by the statute. Both conclude that the statutory enhancements cannot be imposed upon the convictions in question, because that result would not be consistent with the purpose of the enhanced penalty scheme.

In *Diaz v. State,* 129 Md.App. 51, 740 A.2d 81 (1999), *cert. denied,* 357 Md. 482, 745 A.2d 436 (2000), we considered three convictions resulting from a single course of criminal conduct that resulted in a single, multi-count indictment. We held that the CDS convictions could not be enhanced under the predecessor to current section 5–609, former Art. 27, section 293, which provided that the maximum term of imprisonment for persons convicted of specified drug offenses may be doubled "if the offense is a second or subsequent offense." *See id.* at 82–83, 740 A.2d 81. The sentencing court doubled sentences on each of three simultaneously committed, as well as simultaneously tried and convicted, drug offenses, resulting in a 140 year sentence for those crimes. Recognizing that the statute was not clear concerning a multi-count indictment involving multiple infractions arising from a single course of conduct, we held that "[e]nhancement is not available until a subsequent episode occurs on a subsequent date." *See id.* at 82, 86, 740 A.2d 81. Viewing the statutory scheme in context of its purpose, we concluded that the statute authorized only a single enhancement for "a single criminal drama, not the enhancement of each of the individual scenes as set forth in the particular counts of the indictment." *See id.* at 83, 740 A.2d 81.

In *Veney v. State,* 130 Md.App. 135, 744 A.2d 1094, *cert. denied,* 358 Md. 610, 751 A.2d 472 (2000), a defendant with one predicate CDS conviction was convicted of both possession and distribution offenses, arising from a single arrest and criminal episode. The court imposed separate 10–year sentences on each of the new convictions. We held that was error, because the current convictions must be treated as a single "second"

conviction given that they did not arise from "separate occasions." *See id.* at 155–56, 744 A.2d 1094. Following *Thomas* and *Diaz,* we concluded that the same principles applied to the CDS sentencing under section 286. *See id.* at 152, 744 A.2d 1094.

But there is no Maryland precedent governing the application of subsection 5–608(b) to the circumstances presented by this case. Here, we encounter none of the obstacles that precluded enhancements in prior sentencing enhancement cases.

- Unlike Thomas, who had already been sentenced to one 10–year enhancement for a second conviction and was improperly sentenced to another 10–year enhancement upon his third conviction, Taylor was not sentenced as a second offender for his second conviction. *See Thomas,* 104 Md.App. at 469, 656 A.2d 799.

- Similarly, in contrast to *Veney,* where the court improperly imposed two second offender enhancements for two crimes committed in a single criminal episode, here the State did not seek two second offender enhancements against Taylor. *See Veney,* 130 Md.App. at 151–53, 744 A.2d 1094. Nor did the conviction that triggers the second offender enhancement for Taylor stem from multiple offenses during a single criminal episode. *See id.* at 152–53, 744 A.2d 1094.

- In contrast to *Gargliano,* where a 10–year enhancement was improperly imposed for a crime committed before the defendant's predicate first conviction, the conviction supporting enhancement of Taylor's sentence *(i.e.,* one of the August 12, 2004 convictions stemming from crimes committed on October 28, 2003 and February 26, 2004) occurred before Taylor committed the offense for which enhancement is sought *(i.e.,* the November 9, 2004 drug transactions). *See Gargliano,* 334 Md. at 449, 639 A.2d 675.

- Similarly, unlike Diaz, who could not be sentenced as a second offender enhancement because he committed both

the predicate and subsequent offenses at the same time, Taylor would be subjected to second offender enhancement on the basis of both a crime and conviction that occurred before he committed the subsequent offense. *See Diaz,* 129 Md.App. at 83, 740 A.2d 81.

In all of the cases holding that the enhancement may not be applied, the imposition of an enhanced sentence in those circumstances would be inconsistent with the purpose and design of the legislation. In contrast, when we apply the same test to the circumstances presented by this case, the imposition of a second offender enhancement is the *only* result that is consistent with the legislature's intent to increase mandatory penalties for repeat offenses.

Applying the lessons from *Gargliano, Thomas, Veney,* and *Diaz,* we hold that the sentencing court erred in refusing to impose the mandatory 10–year enhancement prescribed by section 5–608(b). As in *Gargliano,* neither the language nor the history of the statute provides an explicitly clear answer; but when the dilemma is measured against the clear purpose of the statute, the correct interpretation becomes obvious.

Indeed, the same considerations of legislative design that have directed our prior decisions make this case the "flip side" of those decisions. In contrapoint to *Thomas,* where imposing the enhancement undermined the legislative purpose for second offender enhancement, that purpose will be "fulfilled to the letter" if—and only if—Taylor "receive[s] the mandatory 10–year non-suspendable, non-parolable sentence upon his conviction as a second offender." *See Thomas,* 104 Md.App. at 470, 656 A.2d 799. Imposing anything less defies the legislative intent. The State simply seeks to have the legislatively prescribed sentence for a second offender imposed upon Taylor's second conviction when the lone condition that the person "previously has been convicted" has been fully satisfied and the 10–year enhancement has not previously been imposed. *See id.* That result, not the one reached by the sentencing court, is consistent with legislative intent.

CONVICTIONS AFFIRMED; SENTENCES VACATED AND CASE REMANDED FOR RESENTENCING. COSTS TO BE PAID BY APPELLANT.