656 A.2d 799

**Eric D. THOMAS**

v.

**STATE of Maryland.**

**No. 824, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

April 6, 1995.

462

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Davis R. Ruark, State's Atty. for Wicomico County, Salisbury, on the brief), for appellee.

Submitted before WILNER, C.J., and BISHOP and HOLLANDER, JJ.

WILNER, Chief Judge.

Appellant was convicted in the Circuit Court for Wicomico County of possession of cocaine, distribution of cocaine, and possession of cocaine within 1000 feet of a school. The court merged the simple possession count into the distribution count and, treating him as a second offender, sentenced appellant to ten years imprisonment without the possibility of parole under Md.Code, art. 27, § 286(c). The court imposed no sentence on the remaining count. Appellant presents four questions in this appeal:

"1. Did the trial court err in denying the motion for mistrial?

2. Did the trial court err in allowing evidence of prior crimes?

3. Did the trial court impose an illegal sentence?

4. Did the trial court err in concluding that the statute involved required a consecutive sentence?"

We find no error with respect to the first two questions and shall therefore affirm appellant's convictions; we hold, however, that the trial court erred in imposing a ten-year no-parole sentence and, accordingly, shall vacate the sentence and remand for resentencing. We do not reach the fourth question.

## FACTUAL BACKGROUND

State Trooper Darren Whitehead testified that at about 3:30 p.m. on July 20, 1993, while working undercover, he drove to appellant's house. Whitehead said that he had met appellant on June 17, 1993 and had observed him on June 23. He stated that appellant got into the car, that Whitehead gave him $20, and that, in exchange, appellant gave him a piece of crack cocaine.

■■■■■■■■■■■■

Appellant was arrested at about 3:35 p.m. and was found to be in possession of crack cocaine at that time.

## DISCUSSION

### Mistrial

■■ On direct examination, appellant admitted that he was in possession of cocaine when he was arrested but denied ever meeting Whitehead or selling him cocaine. On cross-examination, the prosecutor, having elicited the fact that appellant had seen the trooper in court on one occasion, began to ask about appellant's prior convictions. During this colloquy, amid several objections, defense counsel uttered the word "mistrial." The word apparently left her lips as counsel approached the bench, before the court reporter was able to record the words preceding it. The context in which the word was uttered is therefore unclear. The court did not respond to the word and thus did not regard counsel as having actually made a motion for mistrial, and counsel did not pursue the matter.[1]

If counsel in fact intended to move for a mistrial, she certainly did not make that intent clear. In any event, even if we were to assume that such a motion was made and, by the court's silence, it was effectively denied, we would find no abuse of discretion. The prosecutor's attempt to show prior convictions was, to some extent, a fumbling one, requiring some guidance by the court, but there was clearly insufficient prejudice to warrant a mistrial.

---

1. The transcript reveals the following:
   "[STATE'S ATTORNEY]: On the date of January 1992. Court's indulgence—please.
   May we approach?
   (Whereupon, counsel approached the bench, and the following ensued.)
   [COUNSEL FOR APPELLANT]: —mistrial—
   (Whereupon, the Court Reporter asked [counsel for appellant] to repeat herself because she started before the reporter had reached the bench.)
   [STATE'S ATTORNEY]: I want to give the NCIC report—Okay. Court's indulgence.
   (Whereupon, counsel returned to the trial tables.)"

### The Photograph

Trooper Whitehead testified that the day before he met appellant for the first time, he received a photograph of appellant from the Wicomico County Sheriff's Department. Over objection on grounds of relevance, the court permitted a copy of the photograph to be admitted into evidence, ruling that "[i]dentification, as I understand, is the issue here."

Appellant argues that, because of the stated source of the photograph, it amounted to evidence of a prior arrest whose probative value was clearly outweighed by the potential for prejudice. He argues that "given the fact that Trooper Whitehead had very recently seen Appellant, twice, before," the photograph had relatively little probative value on the question of identification, and that that little probative value was outweighed by the potential for prejudice.

That issue is not properly before us because it was not raised in the circuit court. The basis of appellant's objection below was that the photograph was not relevant; no claim was made that it constituted improper evidence of "other crimes." The court ruled that the photograph was relevant to the issue of identification. Appellant had denied ever meeting Whitehead, and thus the photograph was relevant to establish that Whitehead correctly identified the man he met on June 17, the day after receiving the photograph, and the man from whom he purchased cocaine on July 20, as appellant. The court did not err in overruling the objection, the grounds for which were limited to relevance.

Even if the "other crimes" argument had been preserved for our review, we would find no error. There was no testimony as to how the sheriff's department had obtained the photograph—nothing directly indicating it was taken pursuant to an arrest. As the photograph is not in the record before us, we are unable to determine whether it is in the nature of a "mug" shot, but, even if it were clearly recognizable as such, "the decision of a trial court to admit mug shots of a defendant as substantive evidence will not be reversed absent a showing of clear abuse of discretion." *Straughn v. State*, 297 Md. 329,

334, 465 A.2d 1166 (1983). Given the clear relevance of the photograph to a disputed issue, we would not find that the court had abused its discretion in admitting it if the issue had been preserved.

### The Enhanced Sentence

■ The issue here is whether the word "second," as used in the enhanced punishment provision of Md.Code, art. 27, § 286(c)(2), really means only "second," *i.e.*, "next in order after the first in time or place; the ordinal of two" (Webster's New Universal Unabridged Dictionary), or whether it means anything more than "first" and thus includes "third."

Prior to 1988, art. 27, § 286(b)(1) required, in relevant part, that a person convicted of distributing certain specified drugs who had "previously been convicted under this paragraph" be sentenced to prison for not less than 10 years, that no part of that sentence be suspended, and that the defendant not be subject to parole except through Patuxent Institution. A similar provision appeared in § 286(b)(2) with respect to a subsequent conviction of distributing certain other drugs. Under that statute, the 10–year non-suspendable, essentially non-parolable sentence was mandated for each and every conviction after the first, provided that at least one prior conviction occurred before the later offense was committed.

In 1988, the Legislature repealed those parts of subsection (b) and substituted in their place a more structured enhanced punishment provision, which it added as new subsections (c), (d), and (e).

Subsection (c)(1) provided that a person who had previously been convicted under subsection (b)(1) or (b)(2) "shall be sentenced, on being convicted a *second* time under either subsection (b)(1) or subsection (b)(2) of this section, to imprisonment for not less than 10 years." (Emphasis added.) Subsection (c)(2) stated that the sentence of a person sentenced under subsection (b)(1) or (b)(2) *"as a second offender"* could not be suspended to less than 10 years and that the person could be paroled during that period only through Patuxent

Institution. (Emphasis added.) The penalty mandated in subsections (c)(1) and (2) was thus comparable to that required by the deleted provisions formerly contained in subsections (b)(1) and (2), except that the new subsections applied only to persons convicted "a second time," to a "second offender."

Subsection (d), a more complex provision, mandated a sentence of 25 years for a person "convicted a *third* time" under subsection (b)(1) or (b)(2), but only if (i) the person had previously been convicted on two separate occasions under subsection (b)(1) or (b)(2), (ii) the convictions did not arise from a single incident, and (iii) the person served at least one term of confinement of at least 180 days in a correctional institution as a result of a previous conviction under § 286 or § 286A. (Emphasis added.) That sentence was not subject to suspension and the defendant could not be paroled except through Patuxent Institution.

Subsection (e) was comparable to subsection (d). It mandated a non-suspendable and (except through Patuxent Institution) a non-parolable sentence of 40 years for a person who had served three separate terms of confinement as a result of three separate convictions under subsection (b)(1) or (b)(2) on being convicted "a *fourth* time" under subsection (b)(1) or (b)(2). (Emphasis added.)

Prior to 1991, only prior convictions under Maryland law could result in enhanced sentences under § 286. In that year, the Legislature again amended § 286. The purpose of the amendment, according to the synopsis of the bill, was to require "certain mandatory penalties to be imposed on a subsequent offender for certain violations of the Controlled Dangerous Substances Act if the prior offense occurred under the laws of the United States, the District of Columbia, or another state." 1991 Md.Laws Ch. 185. The amended § 286(c)(1) reads as follows:

"A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section shall be

sentenced to imprisonment for not less than ten years if the person has previously been convicted:

(i) Under subsection (b)(1) or subsection (b)(2) of this section;

(ii) Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section; or

(iii) Of an offense under the laws of another state, the District of Columbia, or the United States that would be a violation of subsection (b)(1) or subsection (b)(2) of this section if committed in this State."

Analogous changes were made to subsections (d) and (e).

There is no indication in the legislative history of the 1991 amendment of any intent to make § 286(c), and particularly § 286(c)(2), to a conviction other than the second. For one thing, subsection (c)(2), making the sentence of a "second offender" non-suspendable and not subject to parole, was left unchanged. Moreover, the Senate Judicial Proceedings Committee Floor Report acknowledges that subsection (c) applies to a person "convicted for the second time" and makes clear that the sole purpose of the amendment was to treat "convictions ... rendered under the law of another state, the District of Columbia, or the United States as prior convictions for the purpose of calculating these mandatory minimum penalties...."

As we have indicated, appellant was sentenced under § 286(c) to 10 years, no part suspended, without parole except through Patuxent Institution. The problem is that the evidence on which that sentence was based showed that this was, in fact, appellant's third conviction in sequence, not his second, but, because the second conviction had not occurred before he committed the crime leading to this conviction, he could not be sentenced under subsection (d). *See Gargliano v. State,* 334 Md. 428, 446, 639 A.2d 675 (1994), holding that, for purposes of subsection (c), and necessarily as well for subsections (d) and (e), "an enhanced penalty is warranted *only* if the defendant was convicted of an earlier offense prior to the *commission* of the principal offense."

Appellant's first conviction occurred in 1992. His arrest on the charge leading to this conviction occurred in 1993, "within weeks" of another arrest on drug charges. Although the precise dates are not clear from the record, we are informed, without contradiction, that appellant was convicted and sentenced on the other 1993 charge before he was sentenced on this conviction and that he was sentenced under § 286(c) to a non-suspended, non-parolable 10 years on that occasion. The imposition of sentence under subsection (c) on this conviction thus constitutes his second sentence under that section. He argues that that is improper—that subsection (c) applies only to a sentence as a "second offender" and not a third. The State responds that such a limited reading of subsection (c) would be inconsistent with the intent of the Legislature in enacting the 1988 revisions, which was to increase enhanced punishments for subsequent offenders, in that it would result in a lesser sentence than appellant would have received under the pre–1988 law.

We agree with appellant. In *Gargliano v. State, supra,* 334 Md. at 437, 639 A.2d 675, the Court held § 286(c) to be "a highly penal statute" which must be "strictly construed so that only punishment contemplated by the language of the statute is meted out." When an appellate court "is uncertain whether the Legislature intended to authorize the imposition of an enhanced penalty in a particular situation," the Court continued at 449, 639 A.2d 675, "the presumption must be that the Legislature did not intend to do so." The first step in resolving any uncertainty is to examine "the words of the statute, given their ordinary and popularly understood meaning." *Id.* at 435, 639 A.2d 675. Relying on earlier decisions of the Court of Appeals, we expressed essentially the same principles in *Calhoun v. State,* 46 Md.App. 478, 488, 418 A.2d 1241 (1980), *aff'd,* 290 Md. 1, 425 A.2d 1361 (1981), holding that, in resolving a dispute over the severity of a penalty provided in a penal statute, "a presumption arises in favor of the lesser penalty over the greater one" and that "internal consistency between the various provisions of a statute must

be maintained, and subsections must, therefore, be interpreted in the context of the entire statutory scheme."

There can be little doubt here as to the legislative intent. The General Assembly in 1988 repealed a statute that provided a mandatory 10–year minimum sentence upon a finding of any previous conviction in favor of a more structured approach of increasing mandatory sentences for a second, third, and fourth conviction. It was presumably aware of our holding in *Calhoun* that, where a statute prescribes an enhanced penalty for a "third" conviction, as opposed to a "second or subsequent" conviction, it allows that penalty only upon the one conviction that constitutes the third, and not upon any conviction beyond the second. The Legislature had a variety of language to choose from, in existing enhanced punishment statutes, and it chose specificity over generality. In 1991, when it amended § 286(c)(1) to include certain foreign convictions, it left unchanged the specific language "as a second offender" in the provision mandating a non-suspendable, essentially non-parolable sentence for persons previously convicted.

The State's argument that this result would be inconsistent with the legislative purpose of increasing the mandatory penalties upon subsequent convictions misses the mark. The legislative purpose enunciated in the statute has been fulfilled to the letter. Appellant received the required 10–year non-suspendable, non-parolable sentence upon his conviction as a second offender. What the State seeks to do is have the sentence carefully prescribed for a sentence as a second offender imposed upon a third conviction when the conditions for a mandatory sentence for someone who has been convicted twice have not been satisfied. That, not the result we reach, would be inconsistent with the legislative intent.

CONVICTIONS AFFIRMED; SENTENCE VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR WICOMICO COUNTY FOR SENTENCING PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE

PAID ONE–HALF BY APPELLANT AND ONE–HALF BY WICOMICO COUNTY.